# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

(Charlottesville Division)

| | |
|---|---|
| DR. TARRON RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 3:21-cv-45 |
| CITY COUNCIL OF THE CITY OF ) | |
| CHARLOTTESVILLE, HEATHER HILL, ) | |
| LISA ROBERTSON, NIKUYAH WALKER, ) | |
| and JOHN BLAIR, ) | |
| ) | |
| Defendants. ) | |

## I.  COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Dr. Tarron Richardson, by and through the undersigned counsel, sues Defendants City Council of the City of Charlottesville and Heather Hill, Lisa Robertson, Nikuyah Walker, and John Blair in their official and individual capacities, and alleges as follows:

### NATURE OF THE CASE

This is a free-speech case on behalf of Plaintiff Dr. Tarron Richardson who was the former Charlottesville City Manager in Charlottesville, Virginia. Plaintiff brings this lawsuit because an overly broad disparagement agreement entered into by Plaintiff and the City of Charlottesville violates protected speech under the First Amendment.

The First Amendment expressly forbids government bodies—including city councils—from engaging in viewpoint discrimination and retaliating against people based on the content of their speech.  That is precisely what occurred here.

If the government of Charlottesville is actually supposed to work for the people, then it must be accountable to the people.  Through this action, Dr. Richardson seeks to protect the right

1

of all Charlottesville residents to freely address their elected officials on issues of concern to them and to preserve the right of the public to oversee the manner in which government carries out the people's business

In addition to significant money damages and attorneys' fees to compensate him and to punish the City for the harm and indignities it forced upon him, Dr. Richardson seeks a declaration from this Court that the non-disparagement provision is not legally enforceable against him as an unlawful prior restraint of his inviolable rights to free speech.

## II. JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and §1343 (deprivation of civil rights).

Personal jurisdiction is proper over all Defendants because they reside, work, oversee individuals who work and have their principal place of business within the Charlottesville division of the Western District of Virginia.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District and because Defendants are subject to the Court's personal jurisdiction in this District.

## III. THE PARTIES

Plaintiff Dr. Tarron Richardson is an African-American male who resides in Richmond, Virginia. He served as Charlottesville's City Manager from May 13, 2019, until September 2020.

Defendant Charlottesville City Council is an elected body governing the City of Charlottesville, Virginia. The current City Councilors are Mayor Nikuyah Walker, Vice Mayor Sena Magill, Heather Hill, Michael Payne, and Lloyd Snook.

Defendant Heather Hill is a Charlottesville resident.

Defendant Lisa Robertson is the Interim-City Attorney of Charlottesville.

Defendant Nikuyah Walker is the Mayor of Charlottesville.

Defendant John Blair is the former City Attorney of Charlottesville, who also served as Acting City Manager.  He is a resident of Staunton, Virginia.

### STATEMENT OF FACT

### I.  The City of Charlottesville, in Desperate Need of Leaders with a Proven Track Record, hires Dr. Richardson as its City Manager.

1. Plaintiff Dr. Tarron Richardson (formerly a Dallas-area City Manager) was hired by the city of Charlottesville as City Manager in May 2019 after the horrific incidents of 2017 where Neo-Nazis turned Charlottesville upside down and even murdered an innocent woman a few blocks from City Hall during a white supremacist rally.

In 2019, the City recruited Dr. Richardson after an extensive, nationwide search to identify the most capable and talented local government executives in the United States.  The City received 37 applications for the City Manager position, and Dr. Richardson was the only Black candidate among the three finalists.

Leading up to this candidate search, Dr. Richardson's had established a track record as an effective city manager, which is confirmed by the fact that he was previously named as a finalist for other top administrator jobs: Tallahassee, Florida, in 2018 and Newark, Delaware, in 2012.

Indeed, Dr. Richardson has dedicated his entire adult life to public service.  Immediately before he was hired by the City of Charlottesville (the "City") in 2019, he served as City Manager of DeSoto, Texas, for eight years.  As City Manager, Dr. Richardson administered DeSoto's $96 million annual budget for more than 50,000 residents.

Following his tenure in DeSoto, Dr. Richardson was commended for his effective leadership, and there was not a single blemish to his professional reputation after more than 17 years of experience working in local government.

After relocating to Charlottesville to take the position in May of 2019, Dr. Richardson stepped in and made a positive impact on day one. He hired a new deputy city manager to serve as a COO, and he appointed a new administrative team to implement policy changes that were consistent with the needs of the City. Under Dr. Richardson's leadership, Charlottesville's AAA bond rating was reaffirmed and there was no increase of any tax rates.



Community members have frequently lauded Dr. Richardson's work as City Manager, praising his commitment to enhancing the services that the City was able to provide to residents. Dr. Richardson formed a dedicated team to liaise with public housing residents each week to discuss the challenges they faced.  And the City made much needed capital investments in these areas.

## II. Fearful that He Would Bring Needed Accountability to City Leadership, City Council Attempts Subvert Dr. Richardson's Authority in Violation of the City Charter.

Charlottesville's City government has been plagued by myriad scandals since Dr. Richardson's departure in September of 2020. Many of these issues validate—albeit belatedly—the concerns Dr. Richardson raised during his tenure.

Specifically, in 2019 Dr. Richardson proposed a new credit card policy to "hold folks accountable for the use of taxpayer dollars."[1] "Richardson said his policy would have prevented former Charlottesville Clerk of Council/Chief of Staff Paige Rice from buying an Apple Watch and iPhone X with city funds without anyone's knowledge."[2]

In 2019, Charlottesville's Commonwealth Attorney Joe Platania echoed Dr. Richardson's concerns and expressly encouraged the City to adopt a legitimate policy on the use of City credit cards.

The City Council failed to act, opting instead to reject Dr. Richardson's proposed policy. Shortly after Dr. Richardson left his position, Mayor Nikuyah Walker was investigated based on her spending and use of City-issued credit cards.

---

[1] Nolan Stout, *Richardson believes his credit card policy could have prevented city, Texas scandals*, The Daily Progress (August 31, 2019), https://dailyprogress.com/news/local/richardson-believes-his-credit-card-policy-could-have-prevented-city-texas-scandals/article_2a6edd59-3587-5c28-a892-e2bea2867a3c.html.
[2] *Id.*

5



CHARLOTTESVILLE AND ALBEMARLE NEWS

**Charlottesville mayor responds to questions of illegal spending**

Charlottesville mayor responds to questions of illegal spending

By Max Marcilla | February 8, 2021 at 9:19 PM EST - Updated February 9 at 12:11 AM

City Council's internal emails demonstrate that Mayor Walker and Councilor Heather Hill were actively working to appoint a "Deputy City Manager" to usurp Dr. Richardson's authority. Councilor Lloyd Snook explained that this plan was unlawful, and he cited Charlottesville City Code Section 2-149 to inform the City Council that Dr. Richardson must be in charge of selecting and appointing any Deputy City Manager.[3]  Councilor Snook closed his email by urging the City Council to abandon their attempt to usurp Dr. Richardson's authority and advising against "trying to jam this down [Dr. Richardson]'s throat."

> I don't favor trying to jam this down Tarron's throat. I don't think this is our call, and I think we have to let the City Manager manage the City. It is hard for me to see this as an issue that is so important that his disagreement with Council on this would be a cause for termination or a condition of his continued employment. If it doesn't rise to that level, we have to let him do his job, even if it means that he rejects Council's advice.
>
> Lloyd Snook
> Charlottesville City Councilor
> lsnook@charlottesville.org

---

[3] "The city manager shall have charge of the appointment of competent, qualified officers and employees to the administrative departments of the city and shall have the power to dismiss, suspend and discipline, in accordance with duly adopted personnel regulations, all officers and employees in such departments, except as otherwise specifically provided by law. He shall also have the power to authorize a department head or officer responsible to him to appoint and remove subordinates serving under that department head or officer."

6

This is just one example of City Council "trying to jam" matters "down [Dr. Richardson]'s throat," and it speaks to a larger problem: certain councilors refused to acknowledge or respect Dr Richardson's areas of responsibility and expertise.

Charlottesville's Charter designates that the City Manager is the "chief executive and administrative officer" of the City. In addition, "[a]ll departments of city government, including the fire department and police department, shall be under the general supervision of the city manager." Charlottesville City Code Section 5.01.

Publicly available emails demonstrate that the fire department went around Dr. Richardson and actually reported to Councilor Heather Hill. In one such email, former Fire Chief Andrew Baxter complained about Dr. Richardson for exercising authority over expenditures. Specifically, Baxter demanded to Hill that Dr. Richardson stop requiring approval and that he "empower our employees to move forward with purchasing *what they feel they need, when they need it.*" Baxter went on to assert that when it comes to processing these funding requests, as far as the City Manager is concerned, "[t]he default answer needs to be 'Yes.'"

Additionally, Fire Chief Baxter literally drafted an email that Councilor Hill sent to Dr. Richardson with directives that Dr. Richardson push through certain funding requests as Councilor Hill, too, once again attempted to usurp Dr. Richardson's managerial authority.

Before Baxter's resignation, Councilor Hill worked with Baxter and others to try to manufacture accusations against Dr. Richardson for supposedly mismanaging the City in an attempt to force him out of his office.

These attempts were unsuccessful, however, and documents confirms that Dr. Richardson carried out his position effectively and, at all times, with the utmost professionalism.

### III. After Withstanding Malicious Attacks from City Council for More than a Year, Dr. Richardson Announced His Resignation in September 2020.

Dr. Richardson brought much needed accountability to all areas of local government, including City Council. The changes he instituted made an impact on day one. Dr. Richardson revamped the City's budgeting process and instituted protocols to combat excessive (and unauthorized) expenditures from City employees.

To Charlottesville residents, Dr. Richardson brought a welcome change from "business as usual." Particularly, his professionalism, focus on consistency, and passion and empathy for the most marginalized City residents. Unsurprisingly, certain members of the City Council did not appreciate Dr. Richardson's new approach. They rejected the City Charter's delegation of authority to Dr. Richardson, and they stymied his attempts to implement transparency protocols. City Councilor Heather Hill attempted to remove him from office, including by colluding with City employees to manufacture accusations against Dr. Richardson.

This created a rift on the City Council, as at least one Councilor objected to this and other unlawful usurpations of Dr. Richardson's managerial responsibilities. Despite this open hostility from the City Council, in a little more than a year in office, Dr. Richardson successfully navigated the unprecedented levels of protests against police brutality while simultaneously managing a city gripped by the ongoing, global pandemic.

Because of ridiculous demands and the ongoing chicanery and obstructionism from Walker and Hill that would eventually prevent him from adequately performing his job, Dr. Richardson was constructively terminated; he offered a letter of resignation effective September 30, 2020. Before accepting his resignation, the City required Dr. Richardson to sign a non-disparagement agreement as a condition of receiving his $205,000 in severance pay. The separation agreement contained the following non-disparagement provision:

8

> **Mutual Non-Disparagement:** Dr. Richardson and the City agree, subject to any obligations Dr. Richardson may have under applicable law, that neither party will make or cause to be made any statements or take any actions that disparage or in any way damage the reputation of the City or any of its agents, officers, or employees, or of Dr. Richardson."[4]

On or about September 21, 2020, about a week before Dr. Richardson's resignation went into effect, he spoke during the public comments portion of a City Council meeting about racial issues raised by Charlottesville residents and other matters of public concern in the community. During his comments, text messages between Mayor Walker and Councilor Hill were exchanged. It is clear they were both upset. Walker stated, "This is bs," and Hill responded, "Yes it is. I'm biting my tongue so hard."

The next day, CVILLE-WEEKLY published a longform story feature discussing Dr. Richardson's leadership style, his dedication to public service, and other matters of public concern related to City Government.

---

[4] The separation agreement is attached as **Exhibit 1**, and it entitles Dr. Richardson "to recover, in addition to *any resulting damages*, [his] reasonable attorney fees and costs for enforcement of this agreement."

9



In the story, Richardson shared his belief that "race played a factor" with the expectations from others at the outset of his tenure. He explained that "a lot of people expected me to just say yes to everything, rubber stamp it. But I've been doing this a long time… So when you're someone who says no to things that have been traditionally said yes to, you have issues."

The article also says that Richardson "reject[ed any] suggestion that he had a bad relationship with City Council." He explained, "I worked well with Wes Bellamy, Kathy Galvin, Mike Signer. I worked well with Sena Magill, I worked well with Lloyd Snook, and I worked well with Michael Payne." Richardson made no reference to Mayor Walker or Councilor Heather Hill—who were contacted by the story's author for comment shortly before the September 21, 2020 City Council meeting. Yet his statement would somehow attract their ire.

Once the story was released, Charlottesville City Councilor Heather Hill texted Mayor Walker a picture of C-VILLE Weekly's front page. Hill followed this up with an email to the city stating she was "dismayed by the approach taken [by Dr. Richardson] during the response to community

10

matters on this topic and the language choice used." Hill also said, "I am simply done" with Richardson for supposedly taking credit for the City Council's work and went on to state that

> *"Dr. Richardson separating [sic] the end of the day today would be in the best interest of our organization, given the manner in which he conducted himself last evening and continues [sic] to manipulate our constituents to create his own false narrative."*

The City acquiesced and terminated Dr. Richardson from office, effective immediately.

City Attorney John Blair informed Dr. Richardson that he was being relieved of his responsibilities as City Manager, and Mr. Blair told Dr. Richardson, in no uncertain terms, that he was prohibited from returning to his office as City Manager.

During their conversation, Mr. Blair assured Dr. Richardson that the City did not believe that he had violated his contractual obligations—specifically Dr. Richardson's obligations under the non-disparagement provision. Mr. Blair then confirmed that the City would not seek return of the severance payment Dr. Richardson had received.

By Blair's own admissions, Dr. Richardson was not fired because he failed to honor his duties nor was he fired for misconduct in the workplace or for any legitimate reason. Emails and text messages between Mayor Nikuyah Walker and City Councilor Heather Hill confirm that Dr. Richardson was fired because he supposedly used his "race as a tool of manipulation" and because of the C-VILLE WEEKLY article. Ostensibly, Dr. Richardson was fired based on discriminatory and retaliatory animus.

Months later, the City paid more than $42,000 to hire a consulting firm to identify Dr. Richardson's permanent replacement. But that consulting firm later "determined that Charlottesville's government lacks the stability to effectively recruit a new city manager."

11

### IV. After retaliating against Dr. Richardson via termination, the City Council Violated the Non-Disparagement Provision.

Dr. Richardson was optimistic that the City Council would take seriously its duty to avoid harming his reputation. But the City Council repeatedly disparaged Dr. Richardson in online comments and in correspondence with City residents.

This *after* receiving a grassroots petition from Charlottesville residents demanding that the City Council rehire Dr. Richardson, and *after* Mayor Walker contacted Dr. Richardson to discuss whether he would be willing to return to his previous position.

In a January Facebook post, resident and former Vice-Mayor Wes Bellamy posted a Facebook status update about the City's Council resolution to hire Charles ("Chip") Boyles as Charlottesville City Manager:



Wes Bellamy
20 hours ago

Much Respect to Chip Boyles and his appointment to Charlottesville City Manager. Much respect to the Council for working together to secure a phenomenal leader. Looking forward to Chip and his leadership.

A step in the right direction for the city. Keep pushing.

Also, thanks to City Attorney Blair for his service to the city. Much luck and success in your next endeavor across the Mountain.

[5]

Standing alone, Mr. Bellamy's post relates to Dr. Richardson indirectly, and only insofar as Dr. Richardson was the last person to be selected to fill the post. But that changed when Mayor Walker gratuitously inserted Dr. Richardson into the discussion with the following post:

---

[5] W. Bellamy, Jan. 14, 2020 Facebook Status Update https://www.facebook.com/wesbellamy1/posts/10101697443548083 (**Exhibit 2**).

12



Nikuyah J Walker

Jeffrey Fogel As I told you earlier, this was a very unfortunate way to handle the city manager search process. I found out that the process was going to be a non-traditional process from an individual who was not one of my four colleagues. I handled a horrible situation the best way I could. I believe that Chip will bring fresh energy and a neutral prospective to the City. Tanesha Hudson I told you that the person who you have been advocating for wasn't being considered as an option. You know I called him and presented that information to council. I still don't support him, but I wasn't going to allow continuous blame to be place in my lap. White people are using your tactics to reclaim their city. I hope you love your family or friend more than you believe in that individual.

In the post above, Mayor Walker described Dr. Richardson as the "person who you have been advocating for." Charlottesville resident Tanesha Hudson responded by instructing Mayor Walker to "turn [her] passion around sweetie you came for a black man not me."[6] This statement, too, refers to Dr. Richardson. Mayor Walker's response to Hudson is below:



Nikuyah J Walker

Tanesha Hudson I never supported the person who you have been advocating for. I still attempted to work with them. I understand they said somethings that you believed would come to fruition, but I didn't see the possiblity of that in the day-to-day interactions that I had with that person. Yes, I supported Wes because Wes' actions aligned with his words. I hope you enjoy your night.

Like · Reply · 14h · Edited

By proclaiming that she did not support Dr. Richardson and then falsely implying that Dr. Richardson's actions are not aligned with his words, Mayor Walker published statements that harmed Dr. Richardson's reputation.

Shortly after Mayor Walker's comments, City Councilor Lloyd Snook made disparaging comments about Dr. Richardson.

Even though Mr. Snook made clear that he supported Dr. Richardson, by repeating Mayor Walker's disparaging comments, Mr. Snook violated his obligations under the Agreement.

---

6 *Id.*

13

Specifically, Councilor Snook took to his public Facebook page and made comments describing past events in violation of the Agreement's non-disparagement provisions:

> *What ultimately triggered his departure, as he explained to me, was a series of e-mails between Mayor Walker and him on August 28 and 29. Mayor Walker had texted him at about 5 PM on August 28, about the question of why some groups were being assessed a fine for having a demonstration, while others weren't. This text was sent right as another protest was taking place. Dr. Richardson didn't respond to her text immediately. At about 7 PM, she very impatiently e-mailed him. He responded to her at about 8 PM, explaining that he didn't see her text for a few hours, because he was busy monitoring the protest. The next morning she responded that his explanation was "rude and unnecessary, per usual."*[7]

Through this statement, Mr. Snook repeated Mayor walker's accusation that Dr. Richardson's responses were usually "both rude and unnecessary."

As the City was still looking to find a permanent City Manager, two Charlottesville residents emailed the City Council on January 14, 2021, with a petition requesting that Dr. Richardson be reinstated as City Manager.

Mr. Snook replied to this email later that night at 9:42 p.m., explaining that he had supported Dr. Richardson in 2020, but that it was not appropriate to rehire him as City Manager:

> today, I want the City to be able to move forward, and I was afraid that bringing back Dr. Richardson would mean that we were going to keep fighting battles of the past year rather than moving forward.

This statement expresses Mr. Snook's belief that re-hiring Dr. Richardson would interfere with the City's ability "to move forward." Any reader understood Mr. Snook's comments to be a negative and disparaging description of Dr. Richardson's ability to perform the job of City Manager.

On January 25, 2021, Mayor Walker gave an interview with Vinegar Hill Magazine in which she disparaged Dr. Richardson.

---

[7] Available at https://www.facebook.com/LloydSnookForCouncil/posts/1281522918898510.

14

A short time after Dr. Richardson submitted his written demand that the City cease and desist defaming him, the Facebook comments by Mayor Walker and Councilor Snook were removed from the social media platform, as was Mayor Walker's interview with Vinegar Hill Magazine. This is a clear acknowledgment by the City of its material breach.

But interim-City Attorney Lisa Robertson rejected Dr. Richardson's demand that the City comply with its contractual obligations and stop disparaging his good name. Robertson falsely denied "that there has been a material breach by the City." Robertson also falsely claimed that Dr. Richardson "materially breached the parties' agreement in September 2020," despite the fact that City Attorney John Blair had previously explained that no such breach occurred.

### V. Months After Leaving Office, the City Unlawfully Restrained Dr. Richardson's Free Speech.

As City Councilors continued to publicly disparage Dr. Richardson's tenure while discussing matters of public concern, Dr. Richardson attempted to set the record straight about racism that exists in the highest levels of government in Charlottesville.

He considered utilizing an op-ed in the local paper to address racism within City government and related matters of public concern that he was uniquely positioned to describe.

Aware of his non-disparagement obligations and concerned that the City may attempt to sue him for return of his severance payment, Dr. Richardson sent a letter to interim-City Attorney Lisa Robertson to notify the City that he intended to publish an op-ed.

On January 12, 2021, Dr. Richardson informed Robertson that he intended to publish an op-ed to "address the conduct and leadership failures of the City Council and Mayor Walker by name."

Dr. Richardson also informed Robertson that he would discuss the City's race problem, as reflected in the excerpt of his proposed op-ed that he provided for her review:

> ***Since my departure as City Manager, Charlottesville residents have asked me to respond to some of the hurtful and damaging accusations***

15

> *that some in City leadership have raised against me on social media, in news reports, and in interviews. But I have remained silent all these months, because I just wanted to put that experience behind me and move forward with my life. In recent days, though, it has become clear to me that I must speak the truth and open up about my time as City Manager.*
>
> *Perhaps more importantly, I feel compelled to speak with candor about the City's race problem. A problem that I know from personal experience persists in the highest levels of City government.*

Dr. Richardson ended the letter by informing Robertson that he would wait before proceeding to publish his op-ed. But he specifically asked Robertson to provide a "written response" so that he could "understand the City's position concerning his op-ed" and the impact it would have on "the non-disparagement provision" and his "severance payment."

Robertson's response made clear that the City would take legal action against Dr. Richardson if he dared to publish the proposed op-ed "at his own risk."

Specifically, Robertson falsely suggested that Dr. Richardson's proposed op-ed would breach "his [] non-disparagement and confidentiality obligations under the agreement." Robertson indicated that litigation regarding these issues was imminent and she demanded that Dr. Richardson preserve all documents in his possession related to his purported breach of the parties' Agreement.-

Robertson refused to back down from her litigation threats until Dr. Richardson agreed not to publish his op-ed. But even after doing so, Robertson has failed to assure Dr. Richardson that the City will not sue him or attempt to claw back the severance payment he received after announcing his resignation.

### IV.     COUNT ONE – 42 U.S.C. 1983
**VIOLATION OF FIRST AMENDMENT, AS APPLIED TO THE STATES UNDER THE FOURTEENTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

16

Dr. Richardson repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

Defendants deprived, and are continuing to deprive, Plaintiff of the rights secured to him by the United States Constitution.

The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws of these United States, with violations thereof giving rise to claims for relief under 42 U.S.C. § 1983.

42 U.S.C. § 1983 protect against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law.

Defendants' early termination of Mr. Richardson for engaging political expression violates his right to free speech as guaranteed by the First Amendment and the Fourteenth Amendment to the U.S. Constitution.

Defendants' actions are, in whole or in part, unlawfully motivated by their disagreement with Dr. Richardson's viewpoint concerning racism in the City's government, and therefore their actions also constitute unlawful viewpoint discrimination.

In addition, Defendants use of the non-disparagement clause to prevent Plaintiff from informing the public about important government actions deprived Plaintiff of his First Amendment right of free speech and to report fully on facts of public concern as guaranteed by the First Amendment.

Dr. Richardson's speech concerns the behavior of public officials in their government capacity.

The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employment. In depriving Plaintiff of these rights, Defendants acted under color of state law.

17

This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

Defendants' practices caused Dr. Richardson harm, including severe emotional distress, and lost benefits.

## V. COUNT TWO
### VIOLATION OF VA. CONST. ART. I, SECTION 12
### (AGAINST ALL DEFENDANTS)

Dr. Richardson repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

Defendants deprived, and are continuing to deprive, Plaintiff of the rights secured to him by the Constitution of Virginia.

Defendants' above-described conduct violated Plaintiff's right to freedom of speech under Article I, Section 12 of the Constitution of Virginia. The enforcement of the non-disparagement clause in the settlement agreement between Dr. Richardson and the city of Charlottesville is contrary to Virginia public policy.

## COUNT THREE
### PUBLIC POLICY VIOLATION

Dr. Richardson repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

Contracts are invalid to the extent they violate public policy stated in a relevant statute, or that the contract violates an important statutory right.

The Constitution of Virginia promotes the right to speak freely, especially on matters of public concern. Because the non-disparagement agreement violates both the spirit and letter of the First Amendment and the public policy of Virginia, it is unlawful and void *ab initio*.

## COUNT FOUR

18

**BREACH OF CONTRACT**

Dr. Richardson repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

Dr. Richardson entered into valid, binding contracts with Defendants.

At all times, Dr. Richardson honored his contractual obligations.

But the City violated its contractual duties by repeatedly disparaging Dr. Richardson, and by removing him from office in advance of the September 30, 2020 date required by the Employment Agreement.

These breaches are material.

These breaches are the proximate cause of considerable damage to Dr. Richardson, including substantial reputational harm, lost future income, and attorneys' fees to enforce his contract rights.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Dr. Richardson respectfully requests that the Court enter an award and judgment in his favor, and against all Defendants jointly and severally, as follows:

VII. awarding Dr. Richardson all expenses and costs, including attorneys' fees, incurred in connection with this action from Defendants;

VIII. a declaratory judgment finding that the actions of all Defendants violate Plaintiff's rights protected under the First Amendment of the United States Constitution and the Constitution of Virginia;

IX. an order declaring that the Defendants engaged un unlawful viewpoint discrimination in violation of the First Amendment of the United States Constitution and the Constitution of Virginia;

X. awarding a preliminary and then permanent injunction prohibiting Defendants from continuing to restrain, impede, prohibit or suppress the Plaintiff from engaging in protected speech;

XI. an order directing Defendants to take such affirmative steps necessary to remediate past restraints to Plaintiff's political expression;

XII. an order enjoining Defendants or all other persons or entities in active concert or privity with them, from taking retaliatory action against Plaintiff for bringing this lawsuit or for advocating for his free speech rights; and

XIII. such other and further relief as the Court deems appropriate or that is necessary to make the Plaintiff whole.

### XIV.   JURY DEMAND

Dr. Richardson demands a trial by jury on all claims and issues so triable.

Date: _____, 2021

                            Respectfully submitted,

                            <u>s/Darren S. Haley</u>

Darren S. Haley VSB# 39582
Haley Law Firm, LLC
1007 Pendleton Street
Greenville, South Carolina 29601
864-235-6638 (0)
864-370-1201 (f)
darren@darrenhaley.com
ddgroup5@aol.com

<u>/s/ Keith B. French</u>
Keith B. French
**Keith B. French Law, PLLC**
2010 E. Broadway St, Suite 132
Pearland, TX 77581
kfrench@peoplefirstfirm.com
Tel: 832-243-6153
Fax: 832-243-1927

Volney Brand
**Brand Law PLLC**
3636 N Hall Ste 610
Dallas, TX 75219
volney@brandlaw.us.com
Tel: 214-932-1472
Fax: 214-932-1473

**ATTORNEYS FOR PLAINTIFF**
**keiPearland**

20